SANDY *et al.* v. CRUMP.*

(Division A.   May 4, 1925.)

[103 So. 804.   No. 24654.]

EXECUTORS AND ADMINISTRATORS. *Lien of trust held to exist from misapplication of funds, making probate of claim unnecessary to enforce it as against all but bona-fide purchaser.*

Under Code 1906, Section 2111 (Hemingway's Code, Section 1779), authorizing creditor having "lien of any kind on property of the decedent" to enforce it against such property without probating claim, where deceased borrowed money, which he secured by mortgage on land, and agreed to use to pay off prior mortgage

thereon, but used to pay off a mortgage on other land, lien of trust on latter, which arose from misapplication of finds, not by decree declaring its existence, may be enforced, in absence of intervening rights of *bona-fide* purchaser for value without notice.

*Headnote 1. Executors and Administrators, 24 C. J., Section 956.

Appeal from chancery court of Pontotoc county.

Hon. Allen Cox, Chancellor.

Suit by R. E. Crump against Mrs. Cora Sandy and others. Decree for complainant, and defendants appeal. Affirmed.

*T. A. Clark,* for appellants.

It was the contention of appellee in the court below that he did not have to register and probate his claim against the estate of the deceased because he had a lien on this property and therefore it was not necessary for him to probate his claim against the estate. It was the contention of the appellant in the court below that it was necessary for the appellee to probate his claim against the estate as he did not have any lien on this property in Pontotoc county but so far as the deed of trust was concerned against the lands in Simpson County that he would not have to probate his claim against the estate.

It is the contention of appellants that if the appellee was entitled to fasten a trust on this land in Pontotoc county for the payment of his debt, it is not such a lien as contemplated by the statute and he does not have to first probate his claim against the estate and the lien referred to in section 1779, Hemingway's Code, has reference solely to specific liens or liens which the administrator is presumed without any presentation to know of the existence of a demand and the specific lien securing it. *Fish* v. *DeLary,* 59 A. S. R. 764; *Miller* v. *The Trustees of Jefferson College,* 5 Smedes & M. 651; *Miller* v. *Helm, et al.,* 2 Smedes & M. 687.

The lien contemplated by the statute that does not have to be probated against the estate is a specific lien.  18 Cyc. 464.  We take the position that the word lien under the statute means those liens that are created by contract and not those created by operation of law.  Those liens that are of record of which the world and administrator has notice.  *Casey* v. *Ault,* 4 Wash. 167, 29 Pac. 1048.

The will of W. H. Sandy wherein he devised this property to his wife and children did not create an express trust on the property real and personal of the testator to pay debts and therefore the limitation provided under section 1775, Hemingway's Code, and amendments thereto that all claims against a deceased person shall be registered, probated and allowed, etc.  *Gordon* v. *McDougal,* 84 Miss. 715.

*Mitchell & Mitchell,* for appellee.

The only question raised by counsel for appellants is that the claim of appellee should have been probated against the estate of W. H. Sandy, deceased, and not having been probated, this action cannot be maintained.  The statute involved is section 1779, Hemingway's Code.  It is the contention of appellee, that under the statute named, he was not required to probate this claim in order to enforce the same and the lien attending it against the specific property herein sought to be subjected to the payment of the claim.  The purpose of recording the mortgage or other lien is only for the benefit of him who claims thereunder, and where the rights of other parties are not involved, it is always immaterial whether an instrument has been recorded or not.

The proof in the case is uncontradicted and establishes beyond the shadow of a doubt that the decedent, W. H. Sandy, when he borrowed the money from appellee, promised to use the same to discharge a prior mortgage on the property with which he attempted to secure appellee; and instead of doing this he used the money to discharge

a mortgage on the property involved in this cause. In such a case the law will transfer the lien, so to speak, from the property in the deed of trust given to appellee, and fix it on the property where the deceased applied it. Counsel for appellant erroneously, we think, says that there was no lien in existence until the court by its decree created it. We contend that the lien existed in fact from the moment when the deceased applied the money as he did. It immediately arose by operation of law, and had just as much an existence in fact as if the deceased had given appellee a mortgage on the property. The court simply found that a lien existed and had been in existence, established it by its decree and provided for its enforcement. It was a specific lien, that is, it attached to certain specific property. The court could not "create" a lien; it could only determine from the testimony whether a lien already existed; and having found from the testimony that a lien did exist, it so declared and decreed.

It is true, we think, that if W. H. Sandy had sold this land to an innocent purchaser for value, appellee could not enforce his lien against such a purchaser; and also if there were other creditors of the estate whose claims had been duly probated, perhaps appellee could not enforce his lien against the property to the exclusion of these other creditors. But no such condition exists here. It is perfectly obvious that these beneficiaries do not occupy the positions, nor possess the rights of innocent purchasers for value. Their rights are based on a purely voluntary conveyance.

The decisions of other states, cited in counsel's brief, we respectfully submit have no bearing on the point involved. No such statute was under consideration in any of these cases; and we are unable to see any good reason for placing such a construction of the statute as contended for, and we therefore respectfully submit that the decree of the chancellor should be affirmed.

Argued orally by *T. A. Clark*, for appellants.

COOK, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Pontotoc county declaring and establishing in favor of appellee a constructive trust in certain lands in Pontotoc county, which during his lifetime were owned by W. H. Sandy, and which passed by devise to the appellants, and ordering a sale of the land to satisfy the lien impressed thereon.

There is no conflict in the testimony, and the facts established are substantially as follows: During his life time W. H. Sandy owned a tract of land in Pontotoc county upon which there was a deed of trust in favor of the Bank of Sherman for the sum of four thousand dollars. He also owned a tract of land in Simpson county upon which there was likewise a lien to secure a balance of the purchase money amounting to several thousand dollars. He applied to the appellee for a loan of four thousand dollars representing to appellee that this sum would enable him to pay off the lien on this Simpson county land, his homestead. The appellee, who resided at Haynesville, La., finally agreed to loan him this sum with the distinct understanding and agreement that it would be applied toward discharging this lien on the Simpson county land, the loan to be secured by a first lien on said land. A deed of trust on this land was executed by Sandy and wife in favor of appellee and the loan consummated, but Sandy did not apply this four thousand dollars toward the discharge of the prior lien on the Simpson county land, and upon which he had given a deed of trust to appellee, but with this money he paid off the deed of trust in favor of the Bank of Sherman on his Pontotoc county land; the balance due on this deed of trust at the time it was paid being the sum of three thousand six hundred sixty-three dollars and thirty-three cents. A few weeks thereafter Mr. Sandy applied to the

appellee for an additional loan of two thousand dollars, representing to appellee that it had developed that he would have to borrow this additional sum to enable him to pay off the first lien on the Simpson county land. The appellee loaned him this additional sum of two thousand dollars and took a new deed of trust on the Simpson county land for the total sum of six thousand dollars. Sandy applied this two thousand dollars toward the liquidation of this first lien, as agreed upon, but nothing more was paid thereon.

Shortly thereafter Mr. Sandy died, leaving a will by which he devised to his wife and children, appellants herein, all the real estate owned by him at the time of his death, and appointing his wife, Mrs. Cora Sandy, as executrix of the will. Mrs. Sandy qualified as executrix and published the required notice to creditors to register and probate their claims against the estate. On acount of the failure to discharge the prior lien on the Simpson county lands the appellee's security therein failed. He did not probate his claim or note, but filed this suit seeking to enforce a trust in the Pontotoc county lands for the repayment of the money used in discharging the lien thereon in favor of the Bank of Sherman.

Upon appeal there is no contention that the chancellor erred in holding that, under the facts, an implied trust was impressed upon this property, but the only contention urged by counsel is that the suit cannot be maintained for the reason that the claim was not probated against the estate of W. H. Sandy, deceased.

In support of the contention that it was unnecessary to probate the claim and note in order to enforce the same against the specific property sought to be subjected to the payment of the claim, the appellee invokes section 2111 Code of 1906 (section 1779, Hemingway's Code), which provides:

"A creditor of a decedent who has a lien of any kind on property of the decedent shall not be barred of his right to enforce the lien against the property by a fail-

ure to present his claim and have it probated and reg
istered, but shall be barred of all claim to be satisfied
out of the assets not affected by such lien; and a person
claiming to have a lien on any property of the decedent
may be made a party to any proper proceeding by the
executor or administrator or a creditor to test the valid-
ity of such claim to a lien, and to determine upon the
right of such claim; and this may be in a proceeding to
sell property, which may be ordered to be sold free from
such lien, or subject to it; and the decree may be made
as to a sale and disposition of the proceeds of the sale of
the property, as may be according to the rights of par-
ties before the court.''

It will be noted that this section provides that a credi-
tor who has ''a lien of any kind on property of the de-
cedent'' is not barred of his right to enforce the lien
against the property upon which the lien exists by a fail-
ure to probate the claim, but is barred of all right to have
such claim satisfied out of assets of the estate which are
not affected by such lien. In the case at bar the trust was
not created by the decree of the court below declaring
its existence, as contended by appellant, but the lien of
the trust arose by operation of law from the misappli-
cation of the funds by the testator in acquiring the par-
ticular property, and existed from the time of such mis-
appropriation, and the heirs and devisees acquired and
hold the property subject to the trust. The statute au-
thorizes the enforcement of any and every kind of lien
against the particular property affected thereby, with-
out the necessity of probating the claim, and, in the ab-
sence of intervening rights of a *bona-fide* purchaser for
value without notice, the lien of the trust impressed up-
on the property here involved may be enforced against
the property, without first probating the claim against
the decedent's estate.

The decree of the court below will therefore be affirmed.

*Affirmed.*